McBRIDE, Judge.
This suit for divorce is grounded on the alleged adultery of the wife. The parties are of mature years; both have grown children who are married; both are grandparents. They were married April 10,. 1955, and established the matrimonial domicile in the Parish of Jefferson. On September 26, 1960, a judgment of separation from bed and board between them was rendered and a settlement of the community was effected. The premises 1204 Wal-tham Drive in Jefferson Parish had been, the former matrimonial domicile of the parties; a small efficiency apartment, consisting of a bedroom, dinette, kitchen and bath, has since been built onto the rear of the building. Defendant, living alone, occupies the house, and defendant’s tenant named Acy, 47 years old, who also lives alone, occupies the small rear apartment. He is defendant’s partner in a business enterprise in New Orleans known as Economy Meat Market to the operation of which both partners devote their time. There is a separate outside entrance to Acy’s apartment; however, there is an inside door between the quarters occupied by defendant and the apartment, and one may proceed from defendant’s quarters to the apartment and vice versa without having to enter from the outside. Defendant is *285 alleged to have committed adultery with her tenant-partner in her portion of the premises on four specific days in April and May 1961. The court below rendered a judgment of divorce, and defendant has appealed.
The husband employed a detective agency “to check on the activities of Mrs. Bosch * * * to determine what she does with her time after she leaves her home or the Economy Meat Market * * *.” He endeavored to prove his wife’s infidelity by the testimony of two private detectives, a composite gist of which is tliat on three of the four days in question defendant and Acy left the Wal-tham Drive premises together via the front door early in the morning and proceeded to the Economy Meat Market in New Orleans ; that on returning in the evenings they entered the house together by way of the front door; that on another day Acy left the meat market alone and was admitted to the Waltham Drive premises through the front door by defendant.
The detectives also testified as to when lights in the house would go on and off. They stated that during the time they had the premises under surveillance no lights appeared in the efficiency apartment in the rear.
The defendant and Acy both admitted that the front door of the house was sometimes used for ingress and egress by Acy. They both denied any wrongdoing and maintained that their relationship was of a business nature and purely platonic. Sometimes, according to their testimony, they discussed business problems “over a cup of coffee.”
There is other testimony in the record to the effect that the defendant and Acy went out together socially and that on one occasion he kissed her and put his arm about her. One of the detectives testified that one evening when the couple entered through the front door the defendant called Acy a vile name. What was meant to be proved by this we do not understand.
The jurisprudence in this state is well settled to the effect that a spouse’s unfaithfulness may be proved by indirect or circumstantial evidence inasmuch as adulterous acts can seldom he proven by direct or positive evidence. Coston v. Coston, 196 La. 1095, 200 So. 474; Guidry v. Allemand, 216 La. 288, 43 So.2d 611; Kieffer v. Heriard, 221 La. 151, 58 So.2d 836; Hayes v. Hayes, 225 La. 374, 73 So.2d 179. But the facts established and the surrounding circumstances must be of such weight as to warrant a conclusion that adultery has been committed. Salles v. Salles, 187 La. 914, 175 So. 618; Clark v. Clark, 207 La. 606, 21 So.2d 758; Rayner v. Rayner, 216 La. 1099, 45 So.2d 637; Savin v. Savin, 218 La. 754, 51 So.2d 41; Meyer v. Hackler, 219 La. 750, 54 So.2d 7; Massa v. Thompson, 220 La. 278, 56 So.2d 422; Arbour v. Murray, 222 La. 684, 63 So.2d 425; Hayes v. Hayes, supra. In the latter case the Court said:
“* * * jn other words, the circumstantial proof in these cases must be so convincing as to exclude any other reasonable hypothesis but that of guilt.”
The trial judge thought that the evidence produced before him was sufficient to prove the charges that the husband made against defendant, but after carefully reading the record and analyzing the testimony and the circumstances, it would be difficult for us to agree with the trial judge and hold that the defendant was guilty of infidelity. The evidence in this case does not, to our minds, meet the test of being so convincing as -to exclude any other reasonable hypothesis but that of guilt. The defendant, indeed, was guilty of indiscretions, but we will not go any further than that and say that she committed adultery on the four days that Acy was seen entering the premises through the door of her living quarters. It cannot be overlooked that there was a door between the respective parts of the house occupied by the parties, and in view of this a conclusion *286 that Acy did not proceed to his own apartment would not be in order. In that respect Pilgrim v. Pilgrim, 235 La. 112, 102 So.2d 864, can be differentiated from the instant case. In the Pilgrim case the evidence showed that the wife and the corespondent entered the wife’s residence about 2:00 a. m., all lights were extinguished, and he did not leave until 4:00 a. m. The corespondent’s visit was purely social and, unlike the instant case, he did not reside on the premises. Furthermore, judgment in the Pilgrim case was rendered by default and neither the wife nor the corespondent denied the charges of adultery.
In Harris v. Harris, 228 La. 19, 81 So.2d 705, the husband was charged with adultery. The woman involved moved into the former matrimonial domicile with four of her children wherein she resided with defendant. The testimony showed that defendant had employed the woman as cook .and washerwoman and paid her a weekly salary. The wife attempted to show adultery from the facts that the husband and the woman were living in the same house, that he on two occasions admitted that they were living together, and that they were •seen riding together in a truck. The husband disputed the charge of adultery. In reversing the judgment of the lower court .awarding a divorce, the Supreme Court said:
“But on viewing the instant cause in the light of those principles we cannot conclude that plaintiff has established, even by indirect or circumstantial evidence, the charge made against her husband. Except for the claimed admissions of guilt by defendant (he denied having made them), no facts or circumstances are revealed by the record that lead fairly and necessarily to the conclusion that adultery was committed as alleged in the petition. Respecting the admissions, our jurisprudence is to the effect that such proof is insufficient, of itself, to convict the defendant. Harman v. McLeland, 16 La. 26; Mack v. Handy, 39 La.Ann. 491, 2 So. 181; Seibert, [Siebert] v. Klapper, 49 La.Ann. 241, 21 So. 259; Arbour v. Murray, 222 La. 684, 63 So.2d 425. It follows that for us to hold in plaintiff’s favor we must (as stated in Savin v. Savin, 218 La. 754, 51 So.2d 41, 45) ‘ * * * draw upon our imagination, and rule that whenever a man and a woman have the opportunity to, they do commit adultery. * * *.’ ”
For the reasons hereinabove stated, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant dismissing plaintiff’s suit at his cost in both courts.
Reversed.